UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| PAUL VANCE KNITTLE, JR, } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Case No.:  2:15-CV-01483-RDP |
| } | |
| CAROLYN W. COLVIN, Acting } | |
| Commissioner of Social Security, } | |
| } | |
| Defendant. } | |

## MEMORANDUM OF DECISION

Plaintiff Paul Vance Knittle, Jr. brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his claims for a period of disability and disability insurance benefits ("DIB").  *See also* 42 U.S.C. § 405(g).  Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.     Proceedings Below**

Plaintiff filed a Title II application for a period of disability and DIB on June 5, 2012, alleging his disability began on October 13, 2009. (R. 108-114). Plaintiff's claim was initially denied on August 20, 2012, after which Plaintiff filed a written request for hearing on October 9, 2012. (R. 63). On November 19, 2013, in Birmingham, Alabama, Plaintiff appeared before Administrative Law Judge ("ALJ") Ronald Reeves and Vocational Expert ("VE") William A. Crunk, Jr. (R. 24-45). After conducting the hearing, the ALJ denied Plaintiff's claim for benefits.

(R. 19). Thereafter, the Appeals Council denied Plaintiff's request for review (R. 1-3), and Plaintiff's case became eligible for appeal. This appeal followed.

**II.     Facts**

At the time of the hearing, Plaintiff was 55 years old. (R. 17). He has at least a high school education. (R. 129). Plaintiff's wife is a home healthcare assistant with Always There In-Home Healthcare. (R. 28).

Plaintiff originally alleged disability due to congestive heart failure. (R. 129). The ALJ found Plaintiff to have the following severe impairments: cardiomyopathy with congestive heart failure, atrial fibrillation, and medical non-compliance. (R. 11). Plaintiff also has a history of mitral valve surgical repair, hypothyroidism, esophageal reflux, testosterone deficiency, osteopenia, dyspnea, sleepiness, anxiety, and depression. (*Id.*). Plaintiff alleges his daily activities are relatively limited due to these disabilities. (R. 158-159). He also alleges that walking and going up stairs requires great exertion, to the extent that he cannot walk up a full flight of stairs without stopping to catch his breath. (R. 31). Plaintiff claims he can walk approximately 20 – 25 yards without needing to sit down. (R. 32). At the ALJ hearing, Plaintiff testified that his difficulty in walking is due to a combination of heart problems and arthritic and orthopedic limitations. (R. 33). He also testified that during his period of disability he spent approximately 80% of his time lying down. (R. 37). Due to his reported pain, Plaintiff's sleep schedule is allegedly sporadic, sleeping one hour during the night and two or three hours during the daytime. (R. 38).

In his Social Security Administration Function Report, Plaintiff stated he no longer drives because it causes him great stress and because if he coughs or sneezes he loses vision and is unable to see. (R. 157). He also stated that he no longer has social interactions because he has

little patience for other people. (R. 159). Plaintiff also remarked that he is unable to squat or return to a standing position without assistance and that he cannot sit still for greater than ten minutes. (R. 161). Finally, Plaintiff stated that he has low concentration and has trouble following detailed instructions. (*Id.*). Plaintiff is currently on Coumadin,[1] and he previously took Ultram for the pain caused by his bone deterioration. (R. 35). He is unable to take Advil, Ibuprofen, and other over-the-counter pain killers due to the side effects they cause. (*Id.*). Plaintiff also has taken Digoxin[2] and Vasotex[3] throughout his alleged period of disability. (R. 237).

Prior to his alleged date of disability, Plaintiff worked as a vocational trade school teacher at Virginia College and as a truck driver. (R. 39-40). The VE characterized his commercial truck driving position as semi-skilled, a collection agent job he previously held as sedentary, and a past construction job as heavy work. (R. 40). The VE also characterized the teaching job as light, but then raised it to medium work based on the type of teaching (*i.e.*, hardware work). (R. 41).

In his work history report, Plaintiff alleged his first episode with heart failure occurred in 1990, during a jaw surgery in which the anesthesiologist failed to properly monitor his fluid output. (R. 151). In August 1997, Plaintiff woke up in the middle of the night with what he believed to have been an asthma attack. (*Id.*). Plaintiff went to the emergency room, and he later testified that his doctor told him he would need a heart transplant unless the hospital was able to cardiovert him. (*Id.*). Plaintiff was successfully cardioverted and then released. (*Id.*). Plaintiff

---

[1] Coumadin is a blood thinning medication.

[2] Digoxin is an arrhythmia medication.

[3] Vasotec is used to treat high blood pressure and congestive heart failure.

3

was unable to recall the name of the doctor that treated him during this instance. (*Id.*). In April 2005, Plaintiff was hospitalized for congestive heart failure, cardiomyopathy, and atrial fibrillation. (R. 184-185). He did not have heart problems again until October 2009, when he met with Dr. Gopal Gododia complaining of shortness of breath. (R. 203-205). Plaintiff again saw Dr. Gododia on November 18, 2009. During this visit, Plaintiff with diagnosed with idiopathic dilated cardiomyopathy, congestive heart failure, mitral valve repair, and atrial fibrillation. (R. 207). Following that visit, Dr. Gododia recommended that Plaintiff apply for disability and opined Plaintiff should cease working on commercial vehicles or doing any heavy lifting. (R. 179).

Plaintiff saw his primary care physician, Dr. Brian Walls, in November 2010 for a routine physical examination. (R. 237-242). Though Plaintiff claimed he had difficulty walking and bilateral weakness that affected his ability to work, Dr. Walls noted Plaintiff's gait as normal and found that he had full strength of the upper and lower extremities. (*Id.*). Plaintiff denied having syncope, dizziness, and diaphoresis to both Dr. Walls and Dr. Gododia, though at his hearing he testified he suffered from bouts of lightheadedness and fainting spells. (R. 15-16). In January 2013, Plaintiff began seeing Dr. Doug Alford. (R. 356). Dr. Alford opined in November 2013 that Plaintiff has been totally and completely disabled since December 2010. (R. 377).

### III.   ALJ Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant

engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. (*Id.*). Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite his impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. (*Id.*). If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

At the first step of the analysis, the ALJ determined that Plaintiff has not engaged in substantial gainful activity during the period from his alleged onset date of October 13, 2009 through his date last insured of December 31, 2010. (R. 11).

At the second step, the ALJ found that Plaintiff suffered from severe impairments of cardiomyopathy with congestive heart failure, atrial fibrillation, and medication non-compliance. (*Id.*). The ALJ also noted that Plaintiff has the following minor impairments: mitral valve surgical repair, hypothyroidism, esophageal reflux, testosterone deficiency, osteopenia, dyspnea, sleepiness, anxiety, and depression.[4] (*Id.*). The ALJ found Plaintiff's depressive and anxiety disorders non-severe based on the four broad functional areas considered in evaluating mental disorders within the Listing of Impairments. (*Id.*). The ALJ found Plaintiff had mild limitations regarding his daily living and social functioning. (*Id.*). The ALJ also considered but discredited Plaintiff's testimony regarding those limitations, finding there was no objective verification of these limitations and the extent limitation Plaintiff alleged was inconsistent with Plaintiff's medical condition. (*Id.*).

At the third step of the analysis, the ALJ found that Plaintiff's impairments did not fall within any section of the Listing of Impairments. (R. 13). The ALJ stated that there was insufficient evidence to support Plaintiff's allegations of chronic heart failure. (*Id.*). He also concluded there is no examining or treating medical source to indicate that Plaintiff's impairments fell within a Listing. (*Id.*).

At the fourth step, the ALJ found Plaintiff able to perform light work, provided that he did not climb ladders, ropes, or scaffolds, or work around work hazards or in concentrated exposure to extreme temperatures. (*Id.*). The ALJ also held that Plaintiff would be able to

---

[4] The ALJ found there is no evidence of limitation associated with these impairments, and declined to deem them "severe." (R. 12).

6

frequently balance, but that he would only occasionally be able to climb ramps or stairs, stoop, kneel, crouch, or crawl. (*Id.*). At the hearing, Plaintiff stated he had congestive heart failure. But, as the ALJ noted, his doctors had not prescribed him any physical restraints or specific dietary restrictions. (R. 30). The ALJ held that although Plaintiff's purported symptoms corresponded with his medically determinable impairments, Plaintiff's allegations were not sufficiently credible absent objective medical testimony. (R. 14). In assessing Plaintiff's RFC, the ALJ considered the nature, location, onset, duration, frequency, radiation, and intensity of symptoms, as well as any precipitating or aggravating factors and whether there were any restrictions imposed by the impairments. (*Id.*). Because of Plaintiff's lack of medical testimony, the ALJ was unable to validate Plaintiff's subjective claims. For example, Plaintiff's treatment for his cardiovascular impairment was sporadic, with little consistency in his doctor's appointments and check-ins. The ALJ found this pattern inconsistent with a disability that is debilitating. (R. 15). Additionally, although Plaintiff testified at the hearing that between 2009 and 2010 he rarely left the couch due to an extreme lack of energy, he told Dr. Walls in November 2010 that he exercised four times a week. (R. 37, 238). Due to these and other inconsistencies in Plaintiff's testimony and his medical record, the ALJ determined that the objective evidence could not support Plaintiff's alleged degree of debilitation.

      Based on the VE's testimony, the ALJ determined Plaintiff was capable of performing his past relevant work as a collections agent. (R. 17). The VE also informed the ALJ that someone with Plaintiff's limitations would have the ability to perform other jobs such as a parts assembler, information clerk, and bakery worker. (R. 18). The ALJ therefore found Plaintiff not disabled within the meaning of Section 1614(a)(3)(A) of the Social Security Act. (*Id.*).

### IV.     Plaintiff's Argument for Reversal

Plaintiff argues that the ALJ failed to consider the entire medical record when making his decision, and improperly discounted the opinion of Plaintiff's treating physicians' testimonies less weight. (Pl. Br. 6, 9). Plaintiff also challenges the ALJ's conclusion that there was insufficient evidence to support Plaintiff's subjective allegations of pain and impairments. (Pl. Br. 6). Additionally, Plaintiff argues that the evidence, when taken longitudinally beginning in 2005, indicates that Plaintiff's subjective testimony is significantly supported, particularly with regards to his continued complaints of shortness of breath upon minimal exertion. (Pl. Br. 7). Plaintiff states that these claims have continually been validated by Dr. Gadodia, whose opinion the ALJ afforded little weight throughout the hearing. (*Id.*).

Plaintiff also argues that the ALJ failed to explain his reasoning for rejecting Dr. Gadodia's opinion that Plaintiff should apply for disability. (Pl. Br. 10). And Plaintiff contends that the ALJ erred in neglecting Dr. Doug Alford's testimony based on the fact that Dr. Alford did not begin treating Plaintiff until January 2013. (Pl. Br. 12).

### V.      Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the

decision is reasonable and supported by substantial evidence. *See Id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

**VI.   Discussion**

After careful review, the court concludes that the ALJ's findings are supported by substantial evidence and that the ALJ applied correct legal standards.

**A.   Plaintiff's Subjective Testimony Conflicts With Plaintiff's Objective Medical History, So the ALJ Did Not Err in Dismissing Plaintiff's Subjective Pain Testimony.**

Plaintiff asserts that the ALJ erred in discrediting of his subjective testimony regarding the amount of pain he experiences, and that error resulted in a flawed VE assessment by the ALJ. (Pl. Br. 5). Plaintiff argues that the ALJ was required to present good cause for discrediting a claimant's subjective testimony, but failed to do so. (*Id.*). He further contends that when an ALJ does not articulate reasons for refusing to credit a claimant's pain testimony, as a matter of law, that testimony must be accepted as true. *Hale*, 831 F.2d at 1012. In other words, Plaintiff argues the ALJ is bound to give Plaintiff the benefit of the doubt. However, that is not the rule in the Eleventh Circuit. In our circuit, when an ALJ's credibility findings are in question, the proper procedure is to remand the case for further fact finding on credibility. *See Smallwood v.*

9

*Schweiker*, 681 F.2d 1349 (11th Cir. 1982) (ruling that an ALJ's lack of explanation for rejecting subjective testimony requires a remand for a new credibility assessment). But the court need not substantially analyze these contrasting rules here. In this case, the ALJ plainly articulated his reasons for rejecting Plaintiff's subjective pain testimony.

In making his decision regarding Plaintiff's application, the ALJ considered the record as a whole. That is, he considered how Plaintiff's symptoms affect his work capacity, the medical record, and that Plaintiff's own testimony conflicted with the objective medical evidence. (Dft. Br. 7-8). After considering the record in its entirety, the ALJ found that while Plaintiff's alleged symptoms are in sync with his medical records, his statements regarding the intensity and persistence of his pain were inconsistent with the objective evidence. (Dft. Br. 8).

Although Plaintiff's disability claim alleged congestive heart failure, his medical records do not reflect the severity Plaintiff alleged at his ALJ hearing. For example, Dr. Gadodia found (or at least reported) no chest pain, palpitation, syncope, paroxysmal dyspnea, or pedal edema during Plaintiff's October 2009 examination. (*Id*.). Plaintiff's alleged onset date of disability is October 13, 2009. The fact that none of these symptoms were present at Plaintiff's October visit with Dr. Gadodia supports the ALJ's finding of inconsistency. It was reasonable for the ALJ to have concluded that if Plaintiff's symptoms were truly as severe as he claimed at his hearing (*i.e.*, severe enough to prevent him from performing his job as a truck driver), Plaintiff likely would have expressed that to his doctor around the time of his onset date. However, he never did so.

The evidence surrounding Plaintiff's October and November 2010 visits with Dr. Walls are also rife with inconsistencies. During his visit in October, Plaintiff disclosed to Dr. Walls that he felt like he could no longer operate a tractor-trailer because of his continued shortness of

breath and fatigue. (R. 243). However, in November he reported to Dr. Walls that he exercised four times a week. (R. 238). These statements are inconsistent with Plaintiff's testimony at the ALJ hearing, in which he stated that he spent almost all of his time throughout 2009 and 2010 lying on the couch and that even the slightest amount of exertion took his breath away and made him feel light-headed. (R. 38). Additionally, in his November 2010 visit with Plaintiff, Dr. Walls noted that Plaintiff's gait and range of motion were normal, although Plaintiff stated that he had difficulty walking and weakness in his legs. (R. 240).

Not only does Plaintiff's medical history conflict with his subjective testimony, but other factors concerning Plaintiff's lifestyle, since his alleged onset date, also negate the credibility of his disability claim. The sporadic nature of Plaintiff's treatment for his cardiovascular symptoms indicates that his pain was not constant. The fact that he neglected to seek treatment for extended periods of time was also substantial evidence supporting the ALJ's finding that his pain was not as claimed. *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). Furthermore, the fact that Plaintiff received no restrictions from his physician (other than to watch his diet) further constitutes substantial evidence that he was not completely disabled. *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 596 (6th Cir. 2005). Finally, Plaintiff's allegation that he is unable to take his medication due to side effects has not been confirmed by any of his physicians. Side effects to medication do not pose a significant problem where the medical evidence does not disclose a claimant's doctor had any concerns. *See Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990). But medical evidence must accompany a claimant's allegations that he is unable to take medication due to such side effects. Here, there is no such evidence. The ALJ did not improperly discredit Plaintiff's subjective testimony; rather, he simply analyzed that evidence, contrasted it with the medical evidence of record, and came to the conclusion that

Plaintiff's testimony was inconsistent with the record evidence. The burden rests on the Plaintiff to show the totality and severity of his disabilities. Below, Plaintiff did not sustain his burden.

### B.      The ALJ Articulated His Reasoning for According Less Weight to Plaintiff's Treating Physicians, and Did Not Err in Discrediting Them.

Plaintiff also argues the ALJ did not provide good cause for according less weight to Plaintiff's treating physician when finding Plaintiff was not disabled. Citing *Lamb v. Bowen*, Plaintiff alleges that absent good cause, an ALJ should not discount the opinion of a claimant's treating physician. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988). However, the ALJ properly articulated his reasoning for giving less weight to Dr. Gadodia's and Dr. Alford's opinions.

An ALJ may consider other factors when determining whether or not to give treating physicians' opinions controlling weight, such as the physician's examining and treating relationship with the claimant, the evidence the physician presents to support his opinion, the consistency of the opinion with the record as a whole, and the physician's specialty. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004).

Because of the inconsistencies within Dr. Gadodia's assessments of Plaintiff, the ALJ declined to give his medical opinion controlling authority. For example, in November 2009, Dr. Gadodia opined that Plaintiff should apply for disability because of his heart impairment and continued fatigue. (R. 210). However, from October 2009 to November 2009, Dr. Gadodia noted Plaintiff had no chest pain, palpitation, syncope, paroxysmal dyspnea and pedal edema. (R. 203-204). These inconsistencies led the ALJ to consider Dr. Gadodia's opinion as only persuasive, rather than binding.

Similarly, the ALJ properly discredited Dr. Alford's opinion after considering the inconsistencies that exist in Dr. Alford's medical testimony. In his letter dated November 19,

2013, Dr. Alford opined that Plaintiff has been disabled since December 2010. (R. 377). However, there is simply no objective medical evidence to substantiate this opinion. Dr. Alford did not begin seeing Plaintiff until January 2013. (R. 356). Plaintiff argues that Dr. Alford's opinion is consistent with Dr. Gadodia's records. (Pl. Br. 12). But, for the reasons already noted, the court has already concluded that the ALJ did not err in giving less weight to Dr. Gadodia's opinion, which was in certain key respects in consistent with his own medical records.  So, the fact that Dr. Alford relied upon Dr. Gadodia's opinions is of no help to Plaintiff here.

**VII.   Conclusion**

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination.  The Commissioner's final decision is therefore due to be affirmed.  A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this June 28, 2016.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE